UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:05CV-133-R

EMHART TEKNOLOGIES LLC                                      PLAINTIFF/APPELLANT

v.

INTERNATIONAL ASSOCIATION OF                                DEFENDANT/APPELLEE
MACHINISTS AND AEROSPACE WORKERS,
AFL-CIO, LOCAL LODGE 2396

**MEMORANDUM OPINION**

This matter comes before the Court on the parties cross-motions for summary judgment. The Plaintiff/Appellant, Emhart Teknologies LLC ("Emhart"), has filed a motion for summary judgment (Docket #7), and the Defendant/Appellee, the International Association of Machinists and Aerospace Workers, AFL-CIO, Local Lodge 2396 ("Union") has responded (Docket #10). The Union filed their own motion for summary judgment (Docket #8), and Emhart has responded (Docket #9). This matter is now ripe for adjudication. For the following reasons, Emhart's Motion for Summary Judgment is **DENIED**, and the Union's Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

In December 2002, the parties entered into a collective bargaining agreement ("Agreement"), which included provisions that dealt with work days, overtime hours, and grievance/arbitration procedures. The instant matter involves a dispute as to whether or not union employees were entitled to double wages or time and a half for working a second shift (overtime) on Saturday(s) within a twenty-four (24) hour time span of having worked on Friday(s) the day before. In May 2005, an arbitrator, David L. Beckam ("Beckam") ruled in

favor of the Union after the Union had submitted two grievances arguing that Emhart had violated the Agreement by failing to pay double wages to employees who worked a second shift on a Saturday. Beckam determined that the contractual language of the agreement was not ambiguous and that the first two hours of the Saturday shift should be paid at time and a half, while the remaining six hours should be double wages.

Emhart argues that Beckam used his own "industrial justice" in deciding the matter and did not abide by the law of the Sixth Circuit and the terms of the Agreement. Further, Emhart asserts that Beckam impermissibly expanded the relief requested by the Union by awarding them as a class and making the award retroactive. The Union has responded that Beckam has the power under the case law to make that award decision, and that he made his findings based upon the language of the Agreement and not his own "industry justice." In its Motion for Summary Judgment the Union argues that the Court should uphold the decision by Beckam because Beckman properly applied the provisions of the Agreement to the dispute. In its response Emhart claimes that an arbitration decision can be vacated by judicial review, and it should be vacated in this matter because Beckam did not base his decision on the terms of the Agreement and the Beckam exceeded his authority by impermissibly awarding relief beyond the scope of the grievances.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate,

a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**DISCUSSION**

A district court may vacate a decision of a labor arbitration ruling when the award by the arbitrator conflicts with the collective bargaining agreement. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960); *Appalachian Regional Healthcare, Inc. v. United Steelworkers of America, AFL-CIO-CLC, LOCAL 14398*, 245 F.3d 601, 604-605

(6th Cir. 2001).  In *Appalachian Regional Healthcare, Inc.*, the Sixth Circuit Court of Appeals upheld the decision by the Eastern District of Kentucky to vacate the arbitrator's award because the decision by the arbitrator conflicted with the express terms of the collective bargaining agreement.  *Appalachian Regional Healthcare, Inc.*, 245 F.3d at 604-605.  However, the United States Supreme Court has held that district courts who review arbitral decisions should not reconsider the "merits" of the award, and must only look to see if the arbitrator's award follows the "essence" of a collective bargaining agreement. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987).[1]  Therefore, though the Court may review a decision by an arbitrator to determine whether or not the arbitral award essentially agrees with the terms of a collective bargaining agreement, the Court may not review the merits of an arbitral award.

In the instant matter, Emhart argues that Beckam did not abide by the terms of the Agreement because he misapplied and misinterpreted the language of the contract when determining the award given to the Union.  Article VI of the Agreement deals with workweek parameters and hours.  Section 6.01 of the Agreement states that a work week shall be forty (40) hours per week, Monday-Friday.  Section 6.02 states that the work day for an employee shall be eight (8) hours per day, within each twenty-four (24) hour period, with a day "beginning with the regularly scheduled starting time of the employee's shift."  Here, the employees regularly worked Monday-Friday, 3:00 PM to 11:00 PM.  The shift in question went from 6:00 AM to 2:00 PM on Saturday(s) following a regular work week.  Section 6.04 is the pertinent section of

---

[1] See also *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."

dispute between the parties because it deals directly with overtime. Part A states that over eight (8) hours per day will be paid time and a half the normal rate for employees, and over ten (10) hours per day will be paid at two (2) times (or double) the normal rate for employees. Part B states that over forty (40) per week will be paid time and a half the normal rate of pay for employees. Part C states: "Time and one-half the employee's regular rate of pay will be paid for all hours actually worked on Saturday up to ten (10) hours; and two (2) times the employee's regular rate of pay will be paid for all hours worked over ten (10) hours on Saturday."

      Emhart argues that Part B of Section 6.04 controls the amount that employees who worked from 6:00 AM to 2:00 PM on Saturday(s) should receive because of its specific language, plus the language Part C indicates that employees must work more than ten (10) hours on a Saturday to receive double the wage. The Union asserts and the arbitrator found that the general provision of Section 6.02 defining a twenty-four (24) workday cannot be ignored, and that as applied to the matter along with Part C, the workday including Saturday for the employees was from 3:00 PM Friday to 3:00 PM Saturday. The Union argues that in addition to the eight (8) regular hours worked on Friday, the overtime of eight (8) hours worked on Saturday from 6:00 AM to 2:00 PM are included within the Friday workday because they fall within the twenty-four (24) hour time span as defined by Section 6.02. Therefore, the Union claims that the arbitrator's decision to award time and a half for the first two (2) hours on Saturday and double for the remaining six (6) hours on Saturday follows the terms of the Agreement because the eight (8) regular hours worked on Friday added to the first two (2) hours worked on Saturday equal ten (10), as defined by Sections 6.02 and Section 6.04 C, respectively. And, as decided by the arbitrator, the remaining six (6) hours should be paid at double the normal rate.

Even if the Court disagreed with the interpretation of the Agreement by both the arbitrator and the Union, the Court could not vacate the decision by the arbitrator in this instance because doing so would require the Court to reconsider the merits of the award.  Here, the arbitrator acted within the parameters of the Agreement in coming to his conclusion, which the Court feels is a reasonable interpretation of the contractual language.  Further, as held by the United States Supreme Court in *United Paperworkers Int'l Union*, "courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or misinterpretation of the contract." *United Paperworkers Int'l Union* 484 U.S. at 36.  Therefore, the Court will not vacate the award by the arbitrator based upon the language of Article VI.

In looking at the additional claims that Beckam impermissibly expanded the relief requested by the grievances submitted to him, Emhart argues that it had no notice that Beckam would treat the arbitration as a "class action" grievance.  Emhart cites the Sixth Court of Appeals case of *NCR Corp. v. Sac-Co., Inc.*, where the Court noted that a district court could vacate an award when an employer who was not a party to the arbitration. *NCR Corp. v. Sac-Co., Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995).  In *NCP Corp.*, the Court held that the arbitrator had exceeded his powers by awarding punitive damages to nonparty dealers. *Id.*

*NCP Corp.* is distinguishable to the instant matter on two separate grounds.  First, Grievance #2-04 gave specific notice to Emhart that *all* employees affected by the lack of back pay should receive compensation.  Under the "Settlement Desired" section, the employee wrote "[a]ll employees affected to be back paid for hours worked on Saturday."  This gave Emhart notice that all employees affected by the loss of pay, whether referred to as a class or not, would

have a stake in the outcome of the arbitration. Further, in *NCP Corp.*, the arbitrator exceeded his power by awarding punitive damages, not loss of pay as is the case in the instant matter. Therefore, the arbitrator did not impermissibly expand the relief sought by permitting the Union to seek out all employees affected by the loss of pay.

Lastly, Emhart asserts that the arbitral award conflicts with Section 5.03 of the Agreement by imposing additional sanctions not found within the contract. The language of Section 5.03 states that "[i]n no event shall a grievance involving monetary matters claim that any adjustment be made *retroactive* for more than seven (7) work days prior to the date of the grievance" (emphasis added). The date of the award by the arbitrator extended from February 21, 2004 until the decision by the arbitrator on May 22, 2005. The dates of the grievance filings were February 24, 2004, and August 4, 2004, respectively. Emhart argues that the time frame for extending the award is limited by the Agreement to only seven (7) days prior to the grievance. However, the language of Section 5.03 does not limit the time frame as claimed by Emhart based upon the dates assigned by the arbitrator because it only prohibits retroactive application of a grievance award up to seven (7) working days, but not future application of the award. The time frame applied by the arbitrator abides by the language of Section 5.03 as it merely applies three (3) days before the grievance was filed, well within the limit of seven (7) days. Therefore, the arbitral award does not conflict with the language of Section 5.03 of the Agreement.

## CONCLUSION

For the foregoing reasons, the Plaintiff/Appellant's Motion for Summary Judgment is **DENIED**, and the Defendant/Appellee's Motion for Summary Judgment is **GRANTED**.

An appropriate order shall issue.